# ADJUSTABLE RATE NOTE

(LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| DECEMBER 27, 2005 | SAN ANTONIO | TEXAS |
|---|---|---|
| [Date] | [City] | [State] |

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240
[Property Address]

### 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 100,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CREVECOR MORTGAGE, INC.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 8.6500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS
(A) Time and Place of Payments
I will pay principal and interest by making a payment every month.
I will make my monthly payments on the 1ST day of each month beginning on FEBRUARY 01, 2006.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
1150 HANLEY INDUSTRIAL COURT, ST. LOUIS, MO 63144
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 779.57. This amount may change.

(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

FIRST LIEN

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT      Modified Form 3590 1/01

Page 1 of 4                              Initials: A.G

Exhibit "A"

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**

The interest rate I will pay may change on the 1ST day of JANUARY, 2008, and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & 65/100 percentage points ( 6.6500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.6500% or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) ( 1.0000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %. My interest rate will never be less than 8.6500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SEE NON-ASSUMABLE ADDENDUM & PREPAYMENT ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____/s/ Arthur Garcia_____ (Seal)      _____ (Seal)
ARTHUR GARCIA                           -Borrower                                          -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                          -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                          -Borrower

_____ (Seal)      _____ (Seal)
                                    -Borrower                                          -Borrower

*[Sign Original Only]*

FIRST LIEN

Modified Form 3590 1/01

PAY TO THE ORDER OF

WITHOUT RECOURSE
CREVECOR MORTGAGE INC.

BY: _____
        DAVID MERCURIO, C.F.O.

# ADDENDUM TO ADJUSTABLE RATE NOTE

THIS ADDENDUM TO ADJUSTABLE RATE NOTE is made this 27TH day of DECEMBER ,2005 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date given by the undersigned (the "Borrower") and made payable to the order of
CREVECOR MORTGAGE, INC.

Paragraph 11 of the Note is hereby restated in its entirety as follows:

## 11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum to Adjustable Rate Note.

_____/s/ Arthur Garcia_____ (Seal)  _____ (Seal)
ARTHUR GARCIA            -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                         -Borrower                                -Borrower

_____ (Seal)  _____ (Seal)
                         -Borrower                                -Borrower

*[Sign Original Only]*

FIRST LIEN

CreveCor Mortgage Inc.
1150 Hanley Industrial Ct.
St. Louis, MO    63144

## ALLONGE TO NOTE

Borrower Name:    Arthur Garcia

Property Address:    5603 Staack Ave
San Antonio, TX 78240

Note Date:
December 27, 2005

Loan Amount:    $ 100,000.00

Pay to the order of

Without recourse

CreveCor Mortgage Inc.

By: _____
Thomas J. Barr, Sr. Vice President

CreveCor Mortgage Inc.
1150 Hanley Industrial Ct.
St. Louis, MO 63144

## ALLONGE TO NOTE

Borrower Name: Arthur Garcia

Property Address: 5603 Staack Ave
San Antonio, TX 78240

Note Date: December 27, 2005

Loan Amount: $ 100,000.00

Pay to the order of    HSBC Mortgage Services, Inc.

Without recourse

CreveCor Mortgage Inc.

By: _____
Thomas J. Bahr, Sr. Vice President

Borrower Name: **GARCIA, ARTHUR**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**
Loan Amount: **100,000.00**
Dated Date: **DECEMBER 27, 2005**
Property Address: **5603 STAACK AVE,, SAN ANTONIO, TX 78240-0000**
Loan#: ▮▮▮▮▮▮▮   Service#: ▮▮▮▮▮▮▮   Cust#: ▮▮▮

## ALLONGE TO NOTE

PAY TO THE ORDER OF:

Assignee: **LSF8 MASTER PARTICIPATION TRUST**

(without recourse)

By:

Assignor: **HSBC MORTGAGE SERVICES, INC., BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: _[signature]_
Craig Davenport, Vice President

# ALLONGE TO NOTE

| | |
|---|---|
| Caliber Document ID#: | ▮▮▮▮ |
| Account Number: | ▮▮▮▮▮▮ |
| Allonge to Note Dated: | 12/27/2005 |
| And Executed by: | ARTHUR GARCIA |
| Property Address: | 5603 STAACK AVE |
| | SAN ANTONIO, TX 78240-2442 |
| Loan Amount: | $100,000.00 |
| Pay to the order of: | _____ |
| Without recourse: | LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE |

*/signature/*

| | |
|---|---|
| By: | Kendra Cook |
| Title: | Vice President |



11/27/2007

Prepared by:
HSBC Mortgage Services
636 Grand Regency Blvd.
Brandon, FL 33510

# Modification of Note Agreement

Loan No: 

This Modification of Note Agreement ("Modification") is effective as of 01/01/2008, and is between ARTHURO GARCIA and (hereinafter referred to as "Borrower"), and HSBC Mortgage Svcs Inc(hereinafter referred to collectively as "Lender"). Together, the Borrower and Lender are referred to herein as "the Parties".

## RECITALS

The Parties enter into this Modification with reference to the following stipulated facts:

    A.    Whereas on 12/27/2005 Borrower(s) executed an Adjustable Rate Note, Loan Agreement, or similar obligation together with all applicable riders or addenda (the "Note"), secured by a Mortgage, Deed of Trust, or similar obligation together with all applicable riders, addenda (the "Security Instrument") in the amount of $100000 recorded in the land records of Bexar county and which encumbers the real estate commonly known as 5603 STAACK AVE, SAN ANTONIO, TX 78240-2442 (the "Subject Property"), and the improvements appearing thereon (the "Premises").

    B.  Borrower is the current owner of record of the Subject Property. No other persons or business entities have ownership, management or control of the Subject Property. Borrower has not assigned, transferred, mortgaged or hypothecated the Subject Property, or any fee estate therein, nor the rents, income and profits of the Subject Property as may be described in the Security Instrument, except as set for in these recitals.
    C.    Borrower has requested that Lender modify certain terms of the Adjustable Rate Note and Adjustable Rate Rider to the Security Instrument (the "Rider"). Lender has agreed to make a modification to the first interest rate Change Date and pursuant to the terms and conditions stated in this Modification.

# AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, it is hereby agreed as follows:

1. **Incorporation of Recitals.** The Recitals are true and are an integral part of this Modification and are incorporated by reference herein.

2. **Extension of First Interest Rate Change Date.** The first interest rate Change Date as provided for in the Note and the Rider shall be modified from 01/01/2008 to 01/01/2009. On the 01/01/2009, your interest rate may change as provided for in the Note and Rider.

1. **Acceleration Upon Unauthorized Transfer.** The acceleration terms under the Note and Security Instrument are incorporated herein by reference.

2. **No Release.** Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and/or Security Instrument. Except as expressly provided in this Modification, all of the terms, covenants agreements and the Note and Security Instrument will remain unchanged and the Parties will be bound by, and comply with, all of the terms and provisions of the instruments, as amended by this Modification. Except to the extent that they are modified by this Modification, the Borrower hereby reaffirms all of the covenants, agreements, and requirements of the Note and Security Instrument, including without limitation, the Borrower's principal balance, covenants and agreements to make all monthly payments, payments of taxes, insurance premiums, assessments, escrow items, prepayment penalties, interest rate calculations, impounds, and all other payments that the Borrower is obliged to make under the Security Instrument.

3. **Conflicts.** To the extent any term(s) or condition(s) in the Note shall contradict or be in conflict with the amended terms set forth herein, such terms and conditions are hereby deemed modified and amended accordingly, upon the effective date hereof, to reflect the terms of the note as so amended herein. All terms of the Note, as amended hereby, shall be and remain in full force and effect and shall constitute the legal, valid binding and enforceable obligations of the Borrower to the Lender.

4. **Changes to Modification.** No provision of this Modification may be amended, waived, discharged or terminated except by a written instrument duly executed and acknowledged by the Parties.

5. **Acknowledgement; Effectiveness.** The Parties acknowledge that they have read this Modification, that they fully understand its terms, provisions, and consequences, and that they enter into this Modification voluntarily and free from duress, fraud, and undue influence of any kind. This Modification shall become effective and binding pursuant to its terms as of the date referenced above. Borrower. The terms, provisions, and conditions of this Modification shall be binding upon and inure to the benefit of each party and their respective legal representative, successors and assigns.

Re: Loan No:

By signing below, Borrower accepts and agree to the terms and covenants contained in this Modification:

_Arthur Davio_          _Arthor Garcia_
ARTHURO GARCIA
_12-27-2007_          _12-27-2007_
Date                                                   Date

Re: Loan No: ▮▮▮▮▮▮

DEC 3 1 2007

## MODIFICATION AGREEMENT – LIMITED TERM INTEREST ONLY

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of 4/18/2014 but effective as of the Modification Effective Date defined herein, by and between ARTHUR GARCIA (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").**

RECITALS:

A. Borrower has a mortgage loan, account number ▇▇▇▇▇▇▇▇ (the "Loan"). This loan is secured by property commonly referred to as 5603 STAACK AVE, SAN ANTONIO, TX 78240 -2442 (the "Property"). The legal description to the Property may be attached to this Agreement by the Servicer if required.

B. Borrower signed the following documents in connection with the Loan:
- Note dated 12/27/2005 in the original amount of $100,000.00 (the "Note").
- Mortgage or Deed of Trust on the Property, recorded in real property records of BEXAR County, TX (the "Mortgage").
- The Note and the Mortgage, together with all documents signed at the same time as the Note and Mortgage are called the "Loan Documents".

C. The following amounts are outstanding under the terms of the Note:

| | |
|---|---|
| Unpaid Principal: | $91,598.32 |
| Unpaid Interest: | $7,620.95 |
| Other Unpaid Amounts: | $7,094.10 |
| Total: | $106,313.37 |

Included in the Other Unpaid Amounts is $0.00, the amount that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. This is known as the "Ancillary Amount".

D. Borrower is in default for failure to make payments or has demonstrated imminent default under the terms of the Note. Servicer either has accelerated or can accelerate the balance of the Note, which would require the Borrower to pay the Note and all Other Unpaid Amounts in full.

E. Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Mortgage.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1. **Borrower's Representations.** Borrower certifies that each of these statements is true:

   A. Borrower is experiencing a financial hardship and is either in default for failure to make payments on the Note or will shortly be in default. Borrower does not have sufficient income or access to sufficient liquid assets to make regular payments on the Note.

   B. The Property has not been condemned or is not subject to condemnation proceedings.

   C. There has been no change in the ownership of the Property since the time the Loan Documents were signed.

D. Borrower has given Servicer information, all of which is true and accurate, regarding Borrower's income and/or liquid assets (with the exception of any information regarding Alimony and Child Support payments, unless the Borrower wants the Servicer to consider that to be income).

E. All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct.

F. Borrower will obtain credit counseling within 30 days of this agreement if the Servicer requires it. Borrower will provide proof of credit counseling if required by Servicer.

2. **Conditions to Effectiveness of Agreement.** This Agreement will only be effective after each of these events happen:

   A. Borrower must sign and return a signed original of this Agreement to Servicer on or before ___5-8-14___.

   B. Servicer, when it receives this Agreement, will verify the accuracy of Borrower representations.

   C. If the Servicer (in its sole discretion) determines that Borrower's representations are accurate, then Servicer will execute this Agreement and it will become effective as of (the "Modification Effective Date"). If the Servicer determines that the Borrower's representations are not accurate, then the Servicer will notify the Borrower and this Agreement will not become effective.

3. **Modification of the Loan Documents.** If all the conditions outlined above are met, then your Loan is modified as follows:

   Summary of Modification: We will reduce the balance on which interest is accruing and we will lower the interest rate for a period of time called the Reduction Period. During the Reduction Period you will make monthly "interest only" payments (plus escrow and Ancillary payments). Certain amounts are deferred, meaning that you still owe them, but they will be collected by the Servicer at a later date. On the Reduction Period End Date, your Loan and interest rate will revert to the terms of your original Note and your payment may increase. Deferred Amounts will remain deferred.

   | | |
   |---|---|
   | New Principal Balance: | $91,598.32 |
   | Modification Interest Rate: | 4.000% |
   | Modification Interest Only Payment: | $305.33 |
   | Monthly Escrow Payment: | $162.52 |
   | Ancillary Monthly Payment: | $0.00 |
   | Total New Monthly Payment: | $467.85 |
   | Reduction Period End Date: | 5/1/2019 |
   | Deferred Amount: | $12,864.77 |
   | New Maturity Date (if applicable): | |
   | Modification Effective Date: | 5/1/2014 |
   | First Modification Payment Date: | 6/1/2014 |

   These Definitions apply to the categories above:

   **New Principal Balance**: This is the principal balance Servicer has agreed to use for this modification and is used to calculate your payment. If you successfully complete this modification, this is the principal balance upon which interest will continue to accrue.

   **Modification Interest Rate**: This is the interest rate that will be in effect under this Agreement. This rate is "fixed" and will not change until the Reduction Period End Date.

   **Modification Interest Only Payment**: This is the new monthly payment and represents interest due and payable monthly on the New Principal Balance. You are not required to make a payment toward the reduction of principal until the Reduction Period End Date. Because the interest rate is "fixed" and will not change until the Reduction Period End Date, this amount will not change unless you make payments to be applied toward Principal.

**Monthly Escrow Payment:** This is your monthly payment into an escrow account and this amount is calculated in accordance with the Loan Documents and State and Federal law. This amount may change from time to time if escrow items (primarily taxes and insurance) increase or decrease.

**Ancillary Monthly Payment:** This includes some or all amounts that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. Servicer has spread the repayment of Ancillary Amounts over a period of __0__ months.

**Total New Monthly Payment:** This is the sum of the Modification Interest Only Payment, Monthly Escrow Payment and Ancillary Monthly Payment.

**Reduction Period End Date:** This is the date on which the Modification Interest Rate will revert to the interest rate provided for in the original Note.

**New Maturity Date:** This is the date on which the Note matures.

**Modification Effective Date:** This is the date that interest begins to accrue at the rate set forth in this Agreement.

**First Modification Payment Date:** This is the date on which your first modified payment is due.

**PLEASE NOTE: On the Reduction Period End Date, this Agreement will terminate and the interest rate of your Loan will revert to those in your Loan Documents. This means that your payment may increase because it will include principal and will be calculated using the interest rate provided for in the original Note.**

**By initialing here, Borrower(s) acknowledge that they understand this provision:**

_[initials]_
Borrower's initials

**Deferred Amount:** The Deferred Amount consists of amounts that are due under the terms of the Note and Loan Documents, but which Servicer has agreed to not collect until payment in full of the debt or the New Maturity Date, whichever happens first. The Deferred Amount can consist of interest due but not paid, outstanding Servicer fees or charges, and advances made by the servicer.

**PLEASE NOTE: The Deferred Amounts will be collected by the Servicer at the earlier of payment in full of the Note or the New Maturity Date. If the Borrower sells the Property or refinances the Loan, the Borrower will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the New Maturity Date and are required to be paid at that time. This means that if the Borrower makes all the payments required by this Agreement the Deferred Amount will still be owed to Servicer.**

**By initialing here, Borrowers acknowledge that they understand this provision:**

_[initials]_
Borrower's initials

4. **Events of Default.** Borrower will be in default and Servicer may terminate this Agreement, if:

   A. Borrower fails to make any payments required by this Agreement within 15 days of any due date for a payment, <u>or</u>

   B. Borrower fails to comply with any other terms or conditions created by this Agreement or the Loan Documents.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

A. All persons who signed the Loan Documents must sign this document in person or by an authorized representative (unless an original signor is deceased). Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

B. This Agreement takes the place of any other agreement that Borrower may have or have had in the past with Servicer including any prior modification or forbearance agreements.

C. This Agreement constitutes notice that any waiver by the Lender, Noteholder or Servicer as to payment of taxes, insurance and other escrow items has been revoked. Where allowed under the Loan Documents, this Agreement established an escrow account for the Loan and Borrower will make monthly payments to an escrow account established by Servicer. These payments will be calculated as required by the Loan Documents. Servicer will not pay Borrower interest on the escrow deposit unless required by State or Federal law.

D. The Loan Documents are properly and duly executed by all parties who were required to execute them and are a valid, binding obligation of the parties to those documents, and each Loan Document is enforceable in accordance with its terms.

E. Except as specifically modified by this Agreement, the terms of the Loan Documents are in full force and effect. This Agreement does not replace or release any of the Loan Documents, except as specifically modified by this Agreement.

F. If the Property is sold, transferred or conveyed to any person or entity without the consent of the Servicer, then if allowed by State or Federal law, Servicer may terminate this Agreement, and require that the balance of the Note together with any fees and other unpaid amounts be repaid in full (meaning that Servicer can accelerate the Note.) In this event, Servicer will give you thirty (30) days notice of Acceleration and if the Note has not been paid in full after that time, Servicer may pursue the remedies in the Mortgage, including foreclosure.

G. Borrower may not assign and no person other than the Borrower may assume Borrower's rights under this Agreement or the Loan Documents.

H. The Servicer may choose to waive a default under this Agreement or the Loan Documents, but a waiver of any event of default will not be understood to waive similar defaults in the future or other defaults that may occur.

I. Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

J. Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the Loan account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

K. If Servicer makes advances for payment of taxes or insurance, accrues interest or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the Monthly Escrow Payment, Ancillary Monthly Payment and Total Monthly Payment amounts above as necessary to account for repayment of these amounts. Servicer will send an appropriate written notice of adjustment to Borrower.

L. Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

M. Borrower is advised that forgiveness of debt (if applicable) may have adverse credit and legal consequences and may result in taxable income to Borrower. Borrower is advised to seek advice from an attorney, certified public accountant or other expert regarding potential consequences of any principal reduction. Borrower hereby acknowledges that Servicer is giving Borrower no such advice.

**THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge:** If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.

Whereof, Servicer and Borrower have executed this Agreement as of the dates indicated below.

_____
ARTHUR GARCIA

Date: 4-27-2014

Account Number: ███████

Caliber Home Loans, Inc., on behalf of the current investor
By: _____
Date: 5/6/14