# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE:<br>**ARTURO GARCIA A/K/A ARTHUR**<br>**GARCIA,**<br>**DEBTOR**<br><br>**SELECT PORTFOLIO SERVICING,**<br>**INC. AS MORTGAGE SERVICER FOR**<br>**CHRISTIANA TRUST, A DIVISION OF**<br>**WILMINGTON SAVINGS FUND**<br>**SOCIETY, FSB, AS INDENTURE**<br>**TRUSTEE, FOR THE CSMC 2014-RPL3**<br>**TRUST, MORTGAGE-BACKED**<br>**NOTES, SERIES 2014-RPL3,**<br>**MOVANT**<br><br>**VS.**<br><br>**ARTURO GARCIA A/K/A ARTHUR**<br>**GARCIA (DEBTOR), RESPONDENT** | § **CASE NUMBER: 16-52882**<br>§<br>§<br>§ **CHAPTER 13**<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

### DECLARATION IN SUPPORT OF
### MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____Trent Roesbery_____, declare under penalty of perjury as follows:

1.      I am a Document Control Officer of Select Portfolio Servicing, Inc. ("SPS") and am authorized to sign this declaration on behalf of SPS as servicing agent for Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3, which is the entity that has the right to foreclose by virtue of being owner and holder of the note. This declaration is provided in support of the Motion for Relief from Stay (the "Motion").

2.      As a mortgage servicer, SPS collects payments from borrowers and maintains up-to-date records concerning the loans it services in its electronic record-keeping system. SPS is a business and maintains the loan records in the course of its regularly conducted business

Exhibit "D"

activities and the records are made at or near the time of the event by or from information transmitted by a person with personal knowledge of the event. It is SPS's regular practice to keep such records in the ordinary course of a regularly conducted business activity.

3.      I have access to SPS' business records, including the business records for and relating to the loan that is the subject of this action. I sign this declaration based upon my review of those records relating to the loan and from my own personal knowledge of how SPS' business records are kept and maintained.

4.      The Debtor, Arthur Garcia has executed and/or delivered and/or is otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Deed of Trust referenced in the Motion (the "Security Instrument"), all obligations of the Debtor under and with respect to the Note and the Security Instrument are secured by the property referenced in the Motion.

5.      As of May 15, 2017, the unpaid principal balance of the Note is $104,418.29.

6.      As of May 15, 2017, there are one or more defaults in paying post-petition amounts due, pursuant to the terms of the Note, as set forth in the chart below:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 5 | 01/01/2017 | 05/01/2017 | $304.94 | $338.02 | $642.96 | $3,214.80 |
| Less suspense balance: | | | | | | ($0.00) |

**Total: $3,214.80**

As of the date listed in this paragraph, the total postpetition arrearage/delinquency is $3,214.80. This is the amount necessary to cure any post-petition default on or about the date hereof.

7.      Upon information and belief, as of May 15, 2017, the unpaid amount of the **prepetition** arrearage and any other amounts to be cured under the confirmed plan is $7,376.90, which constitutes the prepetition default.[1]

8.      The next payment under the terms of the Note will come due on June 1, 2017 and is in the amount of $642.96.

9.      Attached hereto as Exhibit "E" is a postpetition payment history.

10.     [The Debtor(s)] [is/are not] being evaluated for a loss mitigation option. If the [Debtor(s)] [is/are] being evaluated for loss mitigation options, the current status is as follows:

_____N/A_____

_____

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 14 day of July, 2017.

Name: _____

Title:        Trent Roesbery
             Document Control Officer
             Select Portfolio Servicing, Inc.

---

[1] The amount set forth herein is based on the amount reflected on the trustee's ledger. Additional information regarding this amount is available upon request.

# ADJUSTABLE RATE NOTE

### (LIBOR Index - Rate Caps)

███████████

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

DECEMBER 27, 2005                              SAN ANTONIO                              TEXAS
[Date]                                                       [City]                                            [State]

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 100,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is CREVECOR MORTGAGE, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          8.6500 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the 1ST          day of each month beginning on FEBRUARY 01, 2006          . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 01, 2036          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
1150 HANLEY INDUSTRIAL COURT, ST. LOUIS, MO 63144
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 779.57          . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

**FIRST LIEN**                                                                                    ████████

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR INDEX - Single Family - Freddie Mac UNIFORM INSTRUMENT          Modified Form 3590 1/01

████████          Page 1 of 4          Initials: *A.G*

Exhibit "A"

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1ST day of JANUARY , 2008 , and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & 65/100 percentage points ( 6.6500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.6500% or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) ( 1.0000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %. My interest rate will never be less than 8.6500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

FIRST LIEN

Modified Form 3590 1/01

Initials: *A.G.*

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Modified Form 3590 1/01

Initials: *A.G*

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

SEE NON-ASSUMABLE ADDENDUM & PREPAYMENT ADDENDUM ATTACHED HERETO AND MADE A PART HEREOF

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ARTHUR GARCIA                    -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower


_____ (Seal)          _____ (Seal)
                                 -Borrower                                         -Borrower

*[Sign Original Only]*

**FIRST LIEN**

Page 4 of 4                                      **Modified Form 3590 1/01**


PAY TO THE ORDER OF

WITHOUT RECOURSE
CREVECOR MORTGAGE INC.

BY: _____
        DAVID MERCURIO, C.F.O.

# ADDENDUM TO ADJUSTABLE RATE NOTE

THIS ADDENDUM TO ADJUSTABLE RATE NOTE is made this 27TH       day of DECEMBER             ,2005    , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Note (the "Note") of the same date given by the undersigned (the "Borrower") and made payable to the order of
CREVECOR MORTGAGE, INC.

Paragraph 11 of the Note is hereby restated in its entirety as follows:

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Addendum to Adjustable Rate Note.

_____ (Seal)        _____ (Seal)
ARTHUR GARCIA                      -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower


_____ (Seal)        _____ (Seal)
                                   -Borrower                                          -Borrower

*[Sign Original Only]*

FIRST LIEN

# CreveCor Mortgage Inc.
## 1150 Hanley Industrial Ct.
## St. Louis, MO    63144

███████████

# ALLONGE TO NOTE

Borrower Name:     Arthur Garcia

Property Address:     5603 Staack Ave
San Antonio, TX 78240

Note Date:
December 27,2005

Loan Amount:
$ 100,000.00

Pay to the order of

Without recourse

CreveCor Mortgage Inc.

By: _____
Thomas J. Barr, Sr. Vice President

# CreveCor Mortgage Inc.
## 1150 Hanley Industrial Ct.
## St. Louis, MO     63144

███████████

# ALLONGE TO NOTE

Borrower Name:

Arthur Garcia

Property Address:

5603 Staack Ave
San Antonio, TX 78240

Note Date:

December 27,2005

Loan Amount:

$ 100,000.00

Pay to the order of        HSBC Mortgage Services, Inc.

Without recourse

CreveCor Mortgage Inc.

By: _____
     Thomas J. Barr, Sr. Vice President

Borrower Name: **GARCIA, ARTHUR**
Original Beneficiary: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS**
Loan Amount: **100,000.00**
Dated Date: **DECEMBER 27, 2005**
Property Address: **5603 STAACK AVE,, SAN ANTONIO, TX 78240-0000**
Loan#: ███████   Service#: ███████   Cust#: ███

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

Assignee: **LSF8 MASTER PARTICIPATION TRUST**

(without recourse)

By:

Assignor: **HSBC MORTGAGE SERVICES, INC., BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: _____

Craig Davenport, Vice President

# ALLONGE TO NOTE

Caliber Document ID#: ███████

Account Number: ███████

Allonge to Note Dated: **12/27/2005**

And Executed by: **ARTHUR GARCIA**

Property Address: **5603 STAACK AVE**

**SAN ANTONIO, TX 78240-2442**

Loan Amount: **$100,000.00**

Pay to the order of: _____

Without recourse: **LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE**

By: **Kendra Cook**

Title: **Vice President**



Prepared by:
HSBC Mortgage Services
636 Grand Regency Blvd.
Brandon, FL 33510

# Modification of Note Agreement

Loan No: 

This Modification of Note Agreement ("Modification") is effective as of 01/01/2008, and is between ARTHURO GARCIA and (hereinafter referred to as "Borrower"), and HSBC Mortgage Svcs Inc(hereinafter referred to collectively as "Lender"). Together, the Borrower and Lender are referred to herein as "the Parties".

## RECITALS

The Parties enter into this Modification with reference to the following stipulated facts:

A.   Whereas on 12/27/2005 Borrower(s) executed an Adjustable Rate Note, Loan Agreement, or similar obligation together with all applicable riders or addenda (the "Note"), secured by a Mortgage, Deed of Trust, or similar obligation together with all applicable riders, addenda (the "Security Instrument") in the amount of $100000 recorded in the land records of Bexar county and which encumbers the real estate commonly known as 5603 STAACK AVE, SAN ANTONIO, TX 78240-2442 (the "Subject Property"), and the improvements appearing thereon (the "Premises").

B.   Borrower is the current owner of record of the Subject Property.  No other persons or business entities have ownership, management or control of the Subject Property.  Borrower has not assigned, transferred, mortgaged or hypothecated the Subject Property, or any fee estate therein, nor the rents, income and profits of the Subject Property as may be described in the Security Instrument, except as set for in these recitals.
C.   Borrower has requested that Lender modify certain terms of the Adjustable Rate Note and Adjustable Rate Rider to the Security Instrument (the "Rider").  Lender has agreed to make a modification to the first interest rate Change Date and pursuant to the terms and conditions stated in this Modification.

# AGREEMENT

Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties, it is hereby agreed as follows:

1. **Incorporation of Recitals.** The Recitals are true and are an integral part of this Modification and are incorporated by reference herein.

2. **Extension of First Interest Rate Change Date.** The first interest rate Change Date as provided for in the Note and the Rider shall be modified from 01/01/2008 to 01/01/2009. On the 01/01/2009, your interest rate may change as provided for in the Note and Rider.

1. **Acceleration Upon Unauthorized Transfer.** The acceleration terms under the Note and Security Instrument are incorporated herein by reference.

2. **No Release.** Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and/or Security Instrument. Except as expressly provided in this Modification, all of the terms, covenants agreements and the Note and Security Instrument will remain unchanged and the Parties will be bound by, and comply with, all of the terms and provisions of the instruments, as amended by this Modification. Except to the extent that they are modified by this Modification, the Borrower hereby reaffirms all of the covenants, agreements, and requirements of the Note and Security Instrument, including without limitation, the Borrower's principal balance, covenants and agreements to make all monthly payments, payments of taxes, insurance premiums, assessments, escrow items, prepayment penalties, interest rate calculations, impounds, and all other payments that the Borrower is obliged to make under the Security Instrument.

3. **Conflicts.** To the extent any term(s) or condition(s) in the Note shall contradict or be in conflict with the amended terms set forth herein, such terms and conditions are hereby deemed modified and amended accordingly, upon the effective date hereof, to reflect the terms of the note as so amended herein. All terms of the Note, as amended hereby, shall be and remain in full force and effect and shall constitute the legal, valid binding and enforceable obligations of the Borrower to the Lender.

4. **Changes to Modification.** No provision of this Modification may be amended, waived, discharged or terminated except by a written instrument duly executed and acknowledged by the Parties.

5. **Acknowledgement; Effectiveness.** The Parties acknowledge that they have read this Modification, that they fully understand its terms, provisions, and consequences, and that they enter into this Modification voluntarily and free from duress, fraud, and undue influence of any kind. This Modification shall become effective and binding pursuant to its terms as of the date referenced above. Borrower. The terms, provisions, and conditions of this Modification shall be binding upon and inure to the benefit of each party and their respective legal representative, successors and assigns.

Re: Loan No: ██████████

By signing below, Borrower accepts and agree to the terms and covenants contained in this Modification:

*Arthur Dario*

ARTHURO GARCIA

*12-27-2007*

Date

*Arthor Garcia*

*12-27-2007*

Date

Re: Loan No: █████████

**DEC 3 1 2007**

[Space Reserved for Recording Information]

## MODIFICATION AGREEMENT – LIMITED TERM INTEREST ONLY

**To the Borrower: This Agreement contains changes in terms which affect your Loan secured by the Property identified below. This is a legal obligation and you should read and understand the terms of this Agreement before you sign it.**

**This Agreement (the "Agreement") is dated as of 4/18/2014 but effective as of the Modification Effective Date defined herein, by and between ARTHUR GARCIA (collectively, the "Borrower") and Caliber Home Loans, Inc., on behalf of the current investor (the "Servicer").**

RECITALS:

A.  Borrower has a mortgage loan, account number ▮▮▮▮▮▮▮▮▮▮ (the "Loan"). This loan is secured by property commonly referred to as 5603 STAACK AVE, SAN ANTONIO, TX 78240 -2442 (the "Property"). The legal description to the Property may be attached to this Agreement by the Servicer if required.

B.  Borrower signed the following documents in connection with the Loan:

- Note dated 12/27/2005 in the original amount of $100,000.00 (the "Note").

- Mortgage or Deed of Trust on the Property, recorded in real property records of BEXAR County, TX (the "Mortgage").

- The Note and the Mortgage, together with all documents signed at the same time as the Note and Mortgage are called the "Loan Documents".

C.  The following amounts are outstanding under the terms of the Note:

| | |
|---|---|
| Unpaid Principal: | $91,598.32 |
| Unpaid Interest: | $7,620.95 |
| Other Unpaid Amounts: | $7,094.10 |
| Total: | $106,313.37 |

Included in the Other Unpaid Amounts is $0.00, the amount that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. This is known as the "Ancillary Amount".

D.  Borrower is in default for failure to make payments or has demonstrated imminent default under the terms of the Note. Servicer either has accelerated or can accelerate the balance of the Note, which would require the Borrower to pay the Note and all Other Unpaid Amounts in full.

E.  Borrower has provided information to Servicer, and Borrower and Servicer want to modify the terms of the Note and Mortgage.

Borrower and Servicer (collectively, the "Parties"), agree as follows:

1.  **Borrower's Representations.** Borrower certifies that each of these statements is true:

A.  Borrower is experiencing a financial hardship and is either in default for failure to make payments on the Note or will shortly be in default. Borrower does not have sufficient income or access to sufficient liquid assets to make regular payments on the Note.

B.  The Property has not been condemned or is not subject to condemnation proceedings.

C.  There has been no change in the ownership of the Property since the time the Loan Documents were signed.

,D. , Borrower has given Servicer information, all of which is true and accurate, regarding Borrower's income and/or liquid assets (with the exception of any information regarding Alimony and Child Support payments, unless the Borrower wants the Servicer to consider that to be income).

E. All documents and information Borrower has provided to Servicer in connection with this Agreement are true and correct.

F. Borrower will obtain credit counseling within 30 days of this agreement if the Servicer requires it. Borrower will provide proof of credit counseling if required by Servicer.

2. **Conditions to Effectiveness of Agreement.** This Agreement will only be effective after each of these events happen:

A. Borrower must sign and return a signed original of this Agreement to Servicer on or before ___5 - 8 - 14___.

B. Servicer, when it receives this Agreement, will verify the accuracy of Borrower representations.

C. If the Servicer (in its sole discretion) determines that Borrower's representations are accurate, then Servicer will execute this Agreement and it will become effective as of (the "Modification Effective Date"). If the Servicer determines that the Borrower's representations are not accurate, then the Servicer will notify the Borrower and this Agreement will not become effective.

3. **Modification of the Loan Documents.** If all the conditions outlined above are met, then your Loan is modified as follows:

Summary of Modification: We will reduce the balance on which interest is accruing and we will lower the interest rate for a period of time called the Reduction Period. During the Reduction Period you will make monthly "interest only" payments (plus escrow and Ancillary payments). Certain amounts are deferred, meaning that you still owe them, but they will be collected by the Servicer at a later date. On the Reduction Period End Date, your Loan and interest rate will revert to the terms of your original Note and your payment may increase. Deferred Amounts will remain deferred.

| | |
|---|---|
| New Principal Balance: | $91,598.32 |
| Modification Interest Rate: | 4.000% |
| Modification Interest Only Payment: | $305.33 |
| Monthly Escrow Payment: | $162.52 |
| Ancillary Monthly Payment: | $0.00 |
| Total New Monthly Payment: | $467.85 |
| | |
| Reduction Period End Date: | 5/1/2019 |
| Deferred Amount: | $12,864.77 |
| | |
| New Maturity Date (if applicable): | |
| Modification Effective Date: | 5/1/2014 |
| First Modification Payment Date: | 6/1/2014 |

These Definitions apply to the categories above:

**New Principal Balance**: This is the principal balance Servicer has agreed to use for this modification and is used to calculate your payment. If you successfully complete this modification, this is the principal balance upon which interest will continue to accrue.

**Modification Interest Rate**: This is the interest rate that will be in effect under this Agreement. This rate is "fixed" and will not change until the Reduction Period End Date.

**Modification Interest Only Payment**: This is the new monthly payment and represents interest due and payable monthly on the New Principal Balance. You are not required to make a payment toward the reduction of principal until the Reduction Period End Date. Because the interest rate is "fixed" and will not change until the Reduction Period End Date, this amount will not change unless you make payments to be applied toward Principal.

**Monthly Escrow Payment**: This is your monthly payment into an escrow account and this amount is calculated in accordance with the Loan Documents and State and Federal law. This amount may change from time to time if escrow items (primarily taxes and insurance) increase or decrease.

**Ancillary Monthly Payment**: This includes some or all amounts that Servicer has advanced for real property taxes, insurance, water liens, or other amounts that may have become due with respect to the Property. Servicer has spread the repayment of Ancillary Amounts over a period of __0__ months.

**Total New Monthly Payment**: This is the sum of the Modification Interest Only Payment, Monthly Escrow Payment and Ancillary Monthly Payment.

**Reduction Period End Date**: This is the date on which the Modification Interest Rate will revert to the interest rate provided for in the original Note.

**New Maturity Date**: This is the date on which the Note matures.

**Modification Effective Date**: This is the date that interest begins to accrue at the rate set forth in this Agreement.

**First Modification Payment Date:** This is the date on which your first modified payment is due.

**PLEASE NOTE: On the Reduction Period End Date, this Agreement will terminate and the interest rate of your Loan will revert to those in your Loan Documents. This means that your payment may increase because it will include principal and will be calculated using the interest rate provided for in the original Note.**

**By initialing here, Borrower(s) acknowledge that they understand this provision:**

*Arthur Darlio*
Borrower's initials

**Deferred Amount**: The Deferred Amount consists of amounts that are due under the terms of the Note and Loan Documents, but which Servicer has agreed to not collect until payment in full of the debt or the New Maturity Date, whichever happens first. The Deferred Amount can consist of interest due but not paid, outstanding Servicer fees or charges, and advances made by the servicer.

**PLEASE NOTE: The Deferred Amounts will be collected by the Servicer at the earlier of payment in full of the Note or the New Maturity Date. If the Borrower sells the Property or refinances the Loan, the Borrower will be required to pay this Deferred Amount in addition to any other amounts due at that time. Otherwise, these amounts are due on the New Maturity Date and are required to be paid at that time. This means that if the Borrower makes all the payments required by this Agreement the Deferred Amount will still be owed to Servicer.**

**By initialing here, Borrowers acknowledge that they understand this provision:**

*Arthur Darlio*
Borrower's initials

4. **Events of Default.** Borrower will be in default and Servicer may terminate this Agreement, if:

A. Borrower fails to make any payments required by this Agreement within 15 days of any due date for a payment, <u>or</u>

B. Borrower fails to comply with any other terms or conditions created by this Agreement or the Loan Documents.

5. **Additional Agreements.** The Parties further agree to and acknowledge each of the following:

A.   All persons who signed the Loan Documents must sign this document in person or by an authorized representative (unless an original signor is deceased). Borrower, by signing this Agreement, will be presumed to have read this Agreement and understand the terms of this Agreement.

B.   This Agreement takes the place of any other agreement that Borrower may have or have had in the past with Servicer including any prior modification or forbearance agreements.

C.   This Agreement constitutes notice that any waiver by the Lender, Noteholder or Servicer as to payment of taxes, insurance and other escrow items has been revoked. Where allowed under the Loan Documents, this Agreement established an escrow account for the Loan and Borrower will make monthly payments to an escrow account established by Servicer. These payments will be calculated as required by the Loan Documents. Servicer will not pay Borrower interest on the escrow deposit unless required by State or Federal law.

D.   The Loan Documents are properly and duly executed by all parties who were required to execute them and are a valid, binding obligation of the parties to those documents, and each Loan Document is enforceable in accordance with its terms.

E.   Except as specifically modified by this Agreement, the terms of the Loan Documents are in full force and effect. This Agreement does not replace or release any of the Loan Documents, except as specifically modified by this Agreement.

F.   If the Property is sold, transferred or conveyed to any person or entity without the consent of the Servicer, then if allowed by State or Federal law, Servicer may terminate this Agreement, and require that the balance of the Note together with any fees and other unpaid amounts be repaid in full (meaning that Servicer can accelerate the Note.) In this event, Servicer will give you thirty (30) days notice of Acceleration and if the Note has not been paid in full after that time, Servicer may pursue the remedies in the Mortgage, including foreclosure.

G.   Borrower may not assign and no person other than the Borrower may assume Borrower's rights under this Agreement or the Loan Documents.

H.   The Servicer may choose to waive a default under this Agreement or the Loan Documents, but a waiver of any event of default will not be understood to waive similar defaults in the future or other defaults that may occur.

I.   Borrower hereby confirms that this Agreement represents the entire agreement between Borrower and Servicer with respect to the subject matter herein, and that no other prior terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning the modification of the Loan Documents that are inconsistent with the terms of this Agreement shall affect the Loan Documents or negate the operation and effect of this Agreement.

J.   Any expenses incurred in connection with the servicing of the Loan, but not yet charged to the Loan account as of the date of this Agreement, may be charged to the Loan and secured by the Mortgage after the Modification Effective Date.

K.   If Servicer makes advances for payment of taxes or insurance, accrues interest or posts late or other fees to the Loan, each of which is permissible under the Loan Documents to add to amounts outstanding under the Note, between the date Servicer generates this Agreement and the date this Agreement is fully executed, then Servicer may adjust the Monthly Escrow Payment, Ancillary Monthly Payment and Total Monthly Payment amounts above as necessary to account for repayment of these amounts. Servicer will send an appropriate written notice of adjustment to Borrower.

L.   Borrower will execute such other documents or papers as may be reasonably necessary or required by Servicer to effectuate the terms and conditions of this Agreement.

M.   Borrower is advised that forgiveness of debt (if applicable) may have adverse credit and legal consequences and may result in taxable income to Borrower. Borrower is advised to seek advice from an attorney, certified public accountant or other expert regarding potential consequences of any principal reduction. Borrower hereby acknowledges that Servicer is giving Borrower no such advice.

**·THIS IS AN ATTEMPT BY A DEBT COLLECTOR TO COLLECT A CONSUMER DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

**Notice to Consumers presently in Bankruptcy or who have a Bankruptcy Discharge: If you are a debtor presently subject to a proceeding in Bankruptcy Court, or if you have previously been discharged from this debt by a Federal Bankruptcy Court, this communication is not an attempt to collect a debt but is sent for informational purposes only or to satisfy certain Federal or State legal obligations.**

Whereof, Servicer and Borrower have executed this Agreement as of the dates indicated below.

_Arthur Garcia_ (signature)

ARTHUR GARCIA

Date: 4-27-2014

Account Number: ███████

Caliber Home Loans, Inc., on behalf of the current investor

By: _(signature)_

Date: 5/6/14



Return To:
CREVECOR MORTGAGE, INC.

1150 HANLEY INDUSTRIAL COURT
ST. LOUIS, MO 63144

Prepared By:
DENNIS P. SCHWARTZ
SCHWARTZ & ASSOCIATES
1446 HERITAGE DRIVE
MCKINNEY, TEXAS 75069
972-562-1966



———————————[Space Above This Line For Recording Data]———————————

# DEED OF TRUST
MIN ███████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated DECEMBER 27, 2005 , together with all Riders to this document.

**(B) "Borrower"** is
ARTHUR GARCIA, A SINGLE MAN

Borrower is the grantor under this Security Instrument.

**(C) "Lender"** is
CREVECOR MORTGAGE, INC.

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF MISSOURI
Lender's address is
1150 HANLEY INDUSTRIAL COURT, ST. LOUIS, MO 63144
Lender includes any holder of the Note who is entitled to receive payments under the Note.

**TEXAS**-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS
Form 3044  1/01

VMP Mortgage Solutions, Inc. ███████

Page 1 of 16

Initials: *A.G*

Exhibit "B"

**(D) "Trustee"** is
DENNIS P. SCHWARTZ
Trustee's address is
1446 HERITAGE DRIVE, MCKINNEY, TX 75069

**(E) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is a beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ▬▬▬▬▬

**(F) "Note"** means the promissory note signed by Borrower and dated DECEMBER 27, 2005
The Note states that Borrower owes Lender
ONE HUNDRED THOUSAND & 00/100
Dollars (U.S. $ 100,000.00     ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 01, 2036     .

**(G) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(H) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(I) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider  [ ] Condominium Rider  [ ] Second Home Rider
[ ] Balloon Rider  [ ] Planned Unit Development Rider  [ ] 1-4 Family Rider
[ ] VA Rider  [ ] Biweekly Payment Rider
[X] Other(s) [specify]   ARBITRATION PROVISION RIDER & PREPAYMENT RIDER & RIDER
                TO ADJUSTABLE RATE RIDER

**(J) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(K) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(L) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(M) "Escrow Items"** means those items that are described in Section 3.

**(N) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

Initials: _A.G_

Form 3044   1/01

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of BEXAR :

[Name of Recording Jurisdiction]

LOT 5, BLOCK 13, NEW CITY BLOCK 14633, OAK HILLS TERRACE UNIT 3 IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO PLAT THEREOF RECORDED IN VOLUME 5300, PAGE(S) 86, DEED AND PLAT RECORDS OF BEXAR COUNTY, TEXAS.

Parcel ID Number: ▮▮▮▮▮

which currently has the address of

5603 STAACK AVE. [Street]

SAN ANTONIO [City], Texas 78240 [Zip Code] ("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this

Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Initials: A.G          Form 3044  1/01

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Initials _A.G_   Form 3044   1/01

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any

Initials: *A. G*

Form 3044 1/01

interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Initials: _A.G_  Form 3044  1/01

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

Initials $A.G$    Form 3044  1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

Initials A.G   Form 3044   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually

Initials _A.G_   Form 3044  1/01

received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan

Initials _A.G_  Form 3044  1/01

servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence. For the purposes of this Section 22, the term "Lender" includes any holder of the Note who is entitled to receive payments under the Note.**

**If Lender invokes the power of sale, Lender or Trustee shall give notice of the time, place and terms of sale by posting and filing the notice at least 21 days prior to sale as provided by Applicable Law. Lender shall mail a copy of the notice to Borrower in the manner prescribed by Applicable Law. Sale shall be made at public venue. The sale must begin at the time stated in the notice of sale or not later than three hours after that time and between the hours of 10 a.m. and 4 p.m. on the first Tuesday of the month. Borrower authorizes Trustee to sell the property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying indefeasible title to the Property with covenants of general warranty from Borrower. Borrower covenants and agrees to defend generally the purchaser's title to the Property against all claims and demands. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**If the Property is sold pursuant to this Section 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession or other court proceeding.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall provide a release of this Security Instrument to Borrower or Borrower's designated agent in accordance with Applicable Law. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Substitute Trustee; Trustee Liability.** All rights, remedies and duties of Trustee under this Security Instrument may be exercised or performed by one or more trustees acting alone or together. Lender, at its option and with or without cause, may from time to time, by power of attorney or otherwise, remove or substitute any trustee, add one or more trustees, or appoint a successor trustee to any Trustee without the necessity of any formality other than a designation by Lender in writing. Without any further act or conveyance of the Property the substitute, additional or successor trustee shall become vested with the title, rights, remedies, powers and duties conferred upon Trustee herein and by Applicable Law.

Initials *A.G*    Form 3044   1/01

Trustee shall not be liable if acting upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct. Trustee shall not be liable for any act or omission unless such act or omission is willful.

**25. Subrogation.** Any of the proceeds of the Note used to take up outstanding liens against all or any part of the Property have been advanced by Lender at Borrower's request and upon Borrower's representation that such amounts are due and are secured by valid liens against the Property. Lender shall be subrogated to any and all rights, superior titles, liens and equities owned or claimed by any owner or holder of any outstanding liens and debts, regardless of whether said liens or debts are acquired by Lender by assignment or are released by the holder thereof upon payment.

**26. Partial Invalidity.** In the event any portion of the sums intended to be secured by this Security Instrument cannot be lawfully secured hereby, payments in reduction of such sums shall be applied first to those portions not secured hereby.

**27. Purchase Money; Owelty of Partition; Renewal and Extension of Liens Against Homestead Property; Acknowledgment of Cash Advanced Against Non-Homestead Property. Check box as applicable:**

☒ **Purchase Money.**

The funds advanced to Borrower under the Note were used to pay all or part of the purchase price of the Property. The Note also is primarily secured by the vendor's lien retained in the deed of even date with this Security Instrument conveying the Property to Borrower, which vendor's lien has been assigned to Lender, this Security Instrument being additional security for such vendor's lien.

☐ **Owelty of Partition.**

The Note represents funds advanced by Lender at the special instance and request of Borrower for the purpose of acquiring the entire fee simple title to the Property and the existence of an owelty of partition imposed against the entirety of the Property by a court order or by a written agreement of the parties to the partition to secure the payment of the Note is expressly acknowledged, confessed and granted.

☐ **Renewal and Extension of Liens Against Homestead Property.**

The Note is in renewal and extension, but not in extinguishment, of the indebtedness described on the attached Renewal and Extension Exhibit which is incorporated by reference. Lender is expressly subrogated to all rights, liens and remedies securing the original holder of a note evidencing Borrower's indebtedness and the original liens securing the indebtedness are renewed and extended to the date of maturity of the Note in renewal and extension of the indebtedness.

☐ **Acknowledgment of Cash Advanced Against Non-Homestead Property.**

The Note represents funds advanced to Borrower on this day at Borrower's request and Borrower acknowledges receipt of such funds. Borrower states that Borrower does not now and does not intend ever to reside on, use in any manner, or claim the Property secured by this Security Instrument as a business or residential homestead. Borrower disclaims all homestead rights, interests and exemptions related to the Property.

**28. Loan Not a Home Equity Loan.** The Loan evidenced by the Note is not an extension of credit as defined by Section 50(a)(6) or Section 50(a)(7), Article XVI, of the Texas Constitution. If the Property is used as Borrower's residence, then Borrower agrees that Borrower will receive no cash from the Loan evidenced by the Note and that any advances not necessary to purchase the Property, extinguish an owelty lien, complete construction, or renew and extend a prior lien against the

Property, will be used to reduce the balance evidenced by the Note or such Loan will be modified to evidence the correct Loan balance, at Lender's option. Borrower agrees to execute any documentation necessary to comply with this Section 28.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
ARTHUR GARCIA                    -Borrower

_____

_____ (Seal)
                                 -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                      -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                      -Borrower

_____ (Seal)   _____ (Seal)
                  -Borrower                      -Borrower

Form 3044  1/01

STATE OF TEXAS
County of _____ Bexar _____

    Before me _Renee White_____ on this day personally appeared
ARTHUR GARCIA                                             ,

known to me (or proved to me on the oath of _____
or through ___Photo ID_____ ) to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that he/she/they executed the same for the purposes and
consideration therein expressed.

    Given under my hand and seal of office this _27____ day of DECEMBER _____, 2005   .

(Seal)

```
RENEE WHITE
NOTARY PUBLIC
STATE OF TEXAS
My Comm. Exp. 06-01-2009
```

_Renee White_____
Notary Public

My Commission Expires: _____

     Initials _A.G_      **Form 3044  1/01**

# ADJUSTABLE RATE RIDER

### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 27TH day of DECEMBER , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
CREVECOR MORTGAGE, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. INTEREST RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial interest rate of 8.6500 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the 1ST day of JANUARY , 2008 , and on that day every 6TH month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SIX & 65/100 percentage points ( 6.6500 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.6500 % or less than 8.6500 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE percentage point(s) ( 1.0000 %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 14.6500 %. My interest rate will never be less than 8.6500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

Initials: *A.G*

Modified Form 3192 1/01

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if a Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: *A. G*

Modified Form 3192 1/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          _____ (Seal)
ARTHUR GARCIA                  -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                               -Borrower                                      -Borrower

Page 4 of 4                                    Modified Form 3192 1/01

Return To:
CREVECOR MORTGAGE, INC.

1150 HANLEY INDUSTRIAL COURT
ST. LOUIS, MO 63144

Return To:
CREVECOR MORTGAGE, INC.

1150 HANLEY INDUSTRIAL COURT
ST. LOUIS, MO 63144

# ARBITRATION RIDER

THIS ARBITRATION RIDER is made this 27TH day of DECEMBER ,2005 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Note to
CREVECOR MORTGAGE, INC.

(the
"Lender") of the same date and covering the Property described in the Security Instrument and located at:

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240
[Property Address]

As used in this Rider the term "Lender" includes Lender's successors and assigns, the company servicing
the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the
mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or
closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security
Instrument.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

ARBITRATION OF DISPUTES. All disputes, claims or controversies arising from or related to
the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding
arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below. This
arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be
governed by the Federal Arbitration Act (9 U.S.C. Sections 1-14). In any arbitration hereunder, the
arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, any
one of the following arbitration service providers as shall be selected by the party initiating such
arbitration: National Arbitration Forum, American Arbitration Association, or JAMS/Undisputed.
However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise
impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service
provider, the parties agree to engage such specified provider. Any arbitration hearing shall be conducted
within the Federal judicial district in which the Property is located, or within such other or more limited
area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and

Initials: 

conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

FEES OF ARBITRATOR. In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125.00 in initial filing fees to the arbitrator. The Lender shall pay any balance of such initial fees. In addition, the Lender shall pay all other fees and costs of the arbitration. In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

EXCLUSION FROM ARBITRATION. This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right of foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lenders' Rights in the Property" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes." Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes."

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate."

NOTICE: BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT TO THE MATTERS DESCRIBED IN THE 'ARBITRATION OF DISPUTES' SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

THIS IS A VOLUNTARY ARBITRATION AGREEMENT. IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION. IN ANY EVENT, ALL TERMS AND CONDITIONS OF THIS RIDER WILL BE NULL AND VOID AT THE TIME THE LOAN EVIDENCED BY THE NOTE IS SOLD, IN WHOLE OR IN PART, TO THE FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FNMA" OR FANNIE MAE).

Initials: 

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Arbitration Rider.

_____ (Seal)          _____ (Seal)
ARTHUR GARCIA                -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                    -Borrower

# PREPAYMENT RIDER
## (Multistate - Hard)

### NOTICE TO BORROWER

**Do not sign this loan agreement before you read it.**
**The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the**
**date provided for repayment in the loan agreement.**

THIS PREPAYMENT RIDER ("Rider") is made this 27TH day of DECEMBER ,
2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note to
CREVECOR MORTGAGE, INC.

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240

[Property Address]

ADDITIONAL COVENANTS: In addition to the covenants and agreements in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A.    PREPAYMENT CHARGE
      The Section of the Note entitled
      BORROWER'S RIGHT TO PREPAY                     is amended to read as follows:

PREPAYMENT CHARGE
      I have the right to make payments of Principal at any time before they are due. A payment
of Principal only is known as a "Prepayment". A Prepayment of all of the unpaid principal is
known as a "full prepayment". A Prepayment of only part of the unpaid principal is known as a
"partial prepayment". When I make a Prepayment, I will tell the Note Holder in writing that I
am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly
payments due under the Note.

      Except as provided below, I may make a full prepayment or a partial prepayment at
any time without paying a Prepayment charge. If within a 2          YEAR          period
of the date of this Note ("Prepayment Period"), I make a full or partial Prepayment(s) of
more than twenty percent (20%) of the original principal amount in a twelve month period,
I will pay a prepayment charge. The prepayment charge will be in an amount equal to the
payment of six (6) months' advance interest (at the rate in effect at the time the Prepayment

Initials: _AG_

occurs) on any Prepayment that, when added to all other amounts prepaid during the twelve month period immediately preceding the date of the Prepayment exceeds twenty percent (20%) of the original principal amount of the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

If my loan has an "interest-only period", my partial Prepayment during this period will reduce the amount of my monthly payments for the remainder of the "interest-only period".

If my loan has an adjustable rate feature, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following a partial Prepayment. However, any reduction due to a partial Prepayment may be offset by an interest rate increase.

The Note Holder's failure to collect a Prepayment charge at the time a Prepayment is received shall not be deemed a waiver of such charge. Any Prepayment charge not collected at the time the Prepayment is received shall be due and payable on demand.

**B.    INVALIDITY**

If a law, which applies to this loan and which sets a maximum Prepayment charge or prohibits Prepayment charges, is finally interpreted so that the Prepayment charge to be collected in connection with this loan exceeds the permitted limits, then (i) any such Prepayment charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, or (ii) if the Prepayment charge is prohibited, no Prepayment charge will be assessed or collected.

**C.    CONTROLLING PROVISIONS**

To the extent that the provisions of this Rider are inconsistent with the provisions of the Security Instrument and/or the Note, the provisions of this Rider shall prevail over and shall supersede any such inconsistent provisions of the Security Instrument and/or the Note. All other provisions of the Security Instrument and/or the Note shall be unchanged and remain in full force and effect.

Initials: _A.G_

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____ (Seal)          _____ (Seal)
ARTHUR GARCIA                -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower

Return To:
CREVECOR MORTGAGE, INC.

1150 HANLEY INDUSTRIAL COURT
ST. LOUIS, MO 63144

# RIDER TO ADJUSTABLE RATE RIDER

THIS RIDER TO ADJUSTABLE RATE RIDER is made this 27TH day of DECEMBER , 2005 , and is incorporated into and shall be deemed to amend and supplement the Adjustable Rate Rider (the "Rider") of the same date, said Rider being incorporated into and deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date and given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to CREVECOR MORTGAGE, INC.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

5603 STAACK AVE., SAN ANTONIO, TEXAS 78240
[Property Address]

Paragraph B of the Rider is hereby restated in its enterety as follows:

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER
Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials. *A. G*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Rider to Adjustable Rate Rider.

_Arthur Garcia_ (Seal)
ARTHUR GARCIA                      -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                   -Borrower

Return To:
CREVECOR MORTGAGE, INC.

1150 HANLEY INDUSTRIAL COURT
ST. LOUIS, MO 63144

Doc# 20050303876
# Pages 29
12/30/2005    11:22:47 AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERRY RICKHOFF COUNTY CLERK

Fees 124.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
12/30/2005    11:22:47 AM
COUNTY CLERK, BEXAR COUNTY TEXAS

Recording Requested By:
HSBC MORTGAGE SERVICES

When Recorded Return To:

ASSIGNMENTS
HSBC MORTGAGE SERVICES
P.O. BOX 1422
BRANDON, FL 33509

_____ ████████████████████

### CORPORATE ASSIGNMENT OF DEED OF TRUST

**Bexar, Texas**
**SELLER'S SERVICING #:** ███████ "GARCIA"

**MERS #:** ███████████ **SIS #:** ████████████

Date of Assignment: April 23rd, 2012
Assignor: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC. "ITS SUCCESSORS AND ASSIGNS" at 1595 SPRING HILL ROAD, STE 310, VIENNA, VA 22182
Assignee: HSBC MORTGAGE SERVICES INC at 636 GRAND REGENCY BLVD, BRANDON, FL 33510

Executed By: ARTHUR GARCIA, A SINGLE MAN To: MORTGAGE ELECTROINC REGISTRATION SYSTEMS, INC. AS A NOMINEE FOR CREVECOR MORTGAGE INC. "ITS SUCCESSORS AND ASSIGNS"
Date of Deed of Trust: 12/27/2005 Recorded: 12/30/2005 in Book/Reel/Liber: 11858 Page/Folio: 1657 as
Instrument No.: 20050303876 In the County of Bexar, State of Texas.

Property Address: 5603 STAACK AVE, SAN ANTONIO, TX 78240
Legal Description: As Referenced on Original Recorded Document

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Deed of Trust having an original principal sum of $100,000.00 with interest, secured thereby, with all moneys now owing or that may hereafter become due or owing in respect thereof, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Deed of Trust.

   TO HAVE AND TO HOLD the said Deed of Trust, and the said property unto the said Assignee forever, subject to the terms contained in said Deed of Trust. IN WITNESS WHEREOF, the assignor has executed these presents the day and year first above written:

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC. "ITS SUCCESSORS AND ASSIGNS"
On April 23rd, 2012

By:_____
MELISSA D CLEARY, Assistant Secretary

████████████████████████████████████████

Exhibit "C"

STATE OF Florida
COUNTY OF Hillsborough

On April 23rd, 2012, before me, TREVIN MYERS, a Notary Public in and for Hillsborough in the State of Florida, personally appeared MELISSA D CLEARY, Assistant Secretary, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

TREVIN MYERS
Notary Expires: 05/30/2015  #EE098231

(This area for notarial seal)

Doc# 20120074887
# Pages 3
04/24/2012   9:52AM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $20.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
04/24/2012   9:52AM
COUNTY CLERK, BEXAR COUNTY TEXAS



Title Data, Inc. SV

## TRANSFER OF LIEN

Customer#: ███  Service#: ███ ████

Loan#: ██████

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **HSBC MORTGAGE SERVICES, INC., C/O CALIBER HOME LOANS, INC., OKLAHOMA CITY, OK 73134-0000**. By these presents does convey, grant, bargain, sell, assign, transfer and set over to: **LSF8 MASTER PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550**. The described Deed of Trust, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust in the amount of **$100,000.00** and recorded in the State of TEXAS, County of BEXAR Official Records, dated **DECEMBER 27, 2005** and recorded on **DECEMBER 30, 2005, as Instrument No. 20050303876, in Book No. ---, at Page No. ---.**
Original Mortgagor: **ARTHUR GARCIA, A SINGLE MAN.** Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS.** Original Trustee: **DENNIS P. SCHWARTZ.** Property Address: **5603 STAACK AVE,, SAN ANTONIO, TX 78240-0000.**
Date: **MAR 1 8 2014**
**HSBC MORTGAGE SERVICES, INC., BY CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT**

By: _____
    Craig Davenport, Vice President

State of **CALIFORNIA** }
County of **ORANGE** } ss.

**Book 16598  Page 438      1pgs**

On **MAR 1 8 2014**, before me, **Reychel Dobiesz**, a Notary Public, personally appeared **Craig Davenport**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
Witness my hand and official seal.

(Notary Name): **Reychel Dobiesz**

REYCHEL DOBIESZ
Commission # 2041456
Notary Public - California
Orange County
My Comm. Expires Sep 15, 2017

Recording Requested & Prepared By:
**T.D. Service Company 4000 W Metropolitan Dr Ste 400 Orange, CA 92868 STEPHANIE M. MARQUEZ**
And When Recorded Mail To:
**T.D. Service Company 4000 W Metropolitan Dr Ste 400 Orange, CA 92868**

Doc# 20140045213 Fees: $26.00
03/21/2014  2:28PM # Pages 1
Filed & Recorded in the Official
Public Records of BEXAR COUNTY
GERARD C. RICKHOFF COUNTY CLERK

Any provision herein which restricts the sale, rental, or use of the described real property because of race is invalid and unenforceable under Federal law
STATE OF TEXAS, COUNTY OF BEXAR
I hereby Certify that this Instrument was FILED in File Number Sequence on this date and at the time stamped hereon by me and was duly RECORDED in the Official Public Record of Real Property of Bexar County, Texas on:

**MAR 2 1 2014**

COUNTY CLERK BEXAR COUNTY, TEXAS

## TRANSFER OF LIEN

Customer#: ▮▮▮▮▮ Service#: ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮
Loan#: ▮▮▮▮▮▮▮

FOR VALUE RECEIVED, **LSF8 MASTER PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550,** hereby assign and transfer to

**See Attached Exhibit " A "**

_____ , _____, all its right, title and interest in and to said Deed of Trust in the amount of **$100,000.00**, recorded in the State of **TEXAS**, County of **BEXAR** Official Records, dated **DECEMBER 27, 2005** and recorded on **DECEMBER 30, 2005**, as Instrument No. **20050303876**, in Book No. **---**, at Page No. **---**.
Executed by: **ARTHUR GARCIA, A SINGLE MAN** (Original Mortgagor).
Original Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR CREVECOR MORTGAGE, INC., ITS SUCCESSORS AND ASSIGNS.** Original Trustee: **DENNIS P. SCHWARTZ.** Property Address: **5603 STAACK AVE,, SAN ANTONIO, TX 78240-0000.**

Date: _____ AUG 1 9 2014
**LSF8 MASTER PARTICIPATION TRUST, BY ITS TRUSTEE U.S. BANK TRUST, N.A., THROUGH CALIBER HOME LOANS, INC., AS ATTORNEY IN FACT FOR THE TRUSTEE**

By: _____
   **Roy Lacey, Authorized Signatory**

State of **OKLAHOMA** }
County of **OKLAHOMA** } ss.

On _____ AUG 1 9 2014 _____, before me, **Hailey Woosley**, a Notary Public, personally appeared **Roy Lacey**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
Witness my hand and official seal.

_____
(Notary Name): **Hailey Woosley**
My commission expires: 06/01/2016

Recording Requested & Prepared By:
**T.D. Service Company 4000 W Metropolitan Dr Ste 400 Orange, CA 92868 OSBALDO VIDRIO**
And When Recorded Mail To:

**EXHIBIT A**

Assignee: Christiana Trust, a division of Wilmington Savings Fund Society, FSB, as indenture trustee, for the CSMC 2014-RPL3 Trust, Mortgage-Backed Notes, Series 2014-RPL3
C/O Select Portfolio Servicing, Inc.
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

Doc# 20160039693
# Pages 3
03/03/2016  2:25PM
e-Filed & e-Recorded in the
Official Public Records of
BEXAR COUNTY
GERARD C. RICKHOFF
COUNTY CLERK
Fees $30.00

STATE OF TEXAS
COUNTY OF BEXAR
This is to Certify that this document
was e-FILED and e-RECORDED in the Official
Public Records of Bexar County, Texas
on this date and time stamped thereon.
03/03/2016  2:25PM
COUNTY CLERK, BEXAR COUNTY TEXAS



Title Data, Inc. SV



## MFR Post-Petition Payment History for Filing

| Loan Information | |
|---|---|
| Loan Number | ▮ |
| Debtors Name - 1 | GARCIA, ARTHUR |
| Debtors Name - 2 | - |
| Property Address | 5603 STAACK AVENUE |
| Property State | TX |

| Bankruptcy Information | |
|---|---|
| Bankruptcy Case # | 16-52882 |
| Filing Date | 12/13/2016 |
| Person filing | ARTHUR GARCIA |
| Number of previous filings | 1 |

| Post Petition Default Information | |
|---|---|
| Post petition due date | 01/01/2017 |
| Post petition amount due | $3,214.80 |
| Escrow Shortage | $0.00 |
| Suspense | $0.00 |
| Total Post petition due | $3,214.80 |

| Post Petition Payment History | | | | |
|---|---|---|---|---|
| Post Pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
| Due | 01/01/2017 | $642.96 | $0.00 | |
| Due | 02/01/2017 | $642.96 | $0.00 | |
| Due | 03/01/2017 | $642.96 | $0.00 | |
| Due | 04/01/2017 | $642.96 | $0.00 | |
| Due | 05/01/2017 | $642.96 | $0.00 | |
| Total Due | | $3,214.80 | | Total Pmts Due |
| Total Received | | $0.00 | | $3,214.80 |

